## 5IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## THOMASVILLE DIVISION

JACKIE HUMPHRIES,                    *
                                     *
          Claimant,                  *
                                     *
vs.                                  *        CASE NO.   6:04-CV-43 (HL)
                                     *
JO ANNE B. BARNHART,                 *
COMMISSIONER OF                      *
SOCIAL SECURITY,                     *
                                     *
          Defendant.                 *        SOCIAL SECURITY APPEAL
_____      *

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's

determination, denied Claimant's application for social security disability benefits, finding

that she was not disabled within the meaning of the Social Security Act and Regulations.

Claimant contends that the Commissioner's decision was in error, and she seeks review

under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c).   All

administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of

whether it is supported by substantial evidence and whether the correct legal standards were

applied.  *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987).  Substantial evidence is defined

as more than a scintilla and means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the

---

[1]Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

authority given in the Social Security Act.  20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a five-step procedure.  20 C.F.R. § 404.1520, Appendix 1, Part 404.  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## ISSUES

**I.**   **Whether the ALJ erred in failing to properly consider the Claimant's IQ scores?**

**II.**   **Whether the ALJ erred in discounting the opinion of Claimant's treating physician?**

**III.**   **Whether the ALJ erred in improperly determining Claimant's residual functional capacity?**

## DISCUSSION

### Administrative Proceedings

Claimant filed an application for social security disability benefits on June 6, 2000. (Claimant's Brief, p. 1).  Claimant contends she became disabled on May 22, 2000, due to fibromyalgia, degenerative disc disease, depression and mild mental retardation. *Id.* at 2.  Her application was denied initially and upon reconsideration. (R- 31-34).   The Claimant then requested a hearing in front of an administrative law judge (ALJ) which was held on January 14, 2003. (R- 312-354). Subsequent to the hearing, the ALJ found that the Claimant was not disabled in a decision dated May 27, 2003. (R- 15-26).   Claimant requested review of  the ALJ's finding by the Appeals Council on June 5, 2003.  The Appeals Council thereafter denied review, making the ALJ's decision the final decision of the Commissioner.

### Statement of Facts and Evidence

In the decision, the ALJ found that Claimant had severe impairments consisting of fibromyalgia, degenerative disc disease of the lumbar spine, dysthymic disorder and borderline intellectual functioning. (R- 19).   The ALJ found, however, that those impairments, either alone or in combination, did not meet or equal any of the relevant Listings. *Id.*  The ALJ then found that Claimant retained the residual functional capacity to perform light work with a sit/stand option. (R- 23).  Finding that Claimant could not return to past relevant work, the ALJ looked to a vocational expert to testify as to whether or not there were a significant number of jobs in the national economy that this Claimant could

4

perform given her age, education, past relevant work and residual functional capacity. (R-24).  Based on that testimony, the ALJ found that Claimant could adjust to other work which exists in significant numbers in the national economy. (R- 25).

I.     **Did the ALJ err in failing to properly consider the Claimant's IQ scores?**

Listing 12.05 is entitled Mental Retardation and Autism.  Mental retardation is noted to refer to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age twenty-two). Listing 12.05C, then, is satisfied where the Claimant can show she had defective intellectual functioning which manifested itself before the age of twenty-two and that the claimant has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.05 and 12.05C. *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00D.  "Significant" means an additional impairment that is more than slight or minimal, but it need not be "severe." *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).

The Claimant contends that she has satisfied the first prong of the 12.05C requirement because the record shows she was examined and found to have IQ scores in the 60's. (Claimant's Brief, p. 11).  In 2000, testing by consultative examiner Dr. Cheryl Gratton revealed a verbal IQ score of 71, a performance IQ of 69 and a full scale score of 67. (R- 154).  A second IQ test done in 2001, at Claimant's attorney's request, by Dr. Karl Willers,

Ph.D., found her to have a verbal IQ score of 67, a performance IQ of 72 and a full scale score of 66. (R- 258-259).

In her Findings regarding Claimant's mental impairment, the ALJ noted that the IQ scores as found by Dr. Gtratton were deemed valid and that the consultative examiner also found that Claimant could easily comprehend and follow simple instructions, get along with others and that she was able to maintain attention to timely complete tasks. (R- 17).

As to the IQ scores obtained by Dr. Willers, the ALJ noted that along with the IQ scores, the doctor also completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (R- 19).  In that document, the ALJ noted that this Claimant's ability to carry out simple instructions, make simple decisions, interact with others, request assistance, accept instructions and respond appropriately to criticism, get along with co-workers, maintain socially acceptable behavior and adhere to basic standards of neatness and cleanliness, was all deemed "good." *Id.*  The ALJ further noted that Dr. Willers found that her ability to handle detailed instructions, remember locations and work-related procedures, maintain concentration, perform scheduled activities, maintain regular attendance, respond to changes in the work place, be aware of normal hazards and take appropriate precautions, set realistic goals or make independent plans was deemed "fair." *Id.*  Lastly, the ALJ noted that Dr. Willers found that Claimant's ability to complete a workday or workweek, travel to unfamiliar places or use public transportation was deemed "poor." *Id.*

After finding that the Claimant had severe impairments consisting of fibromyalgia,

degenerative disc disease, dysthymic disorder and borderline intellectual functioning, the ALJ was then required to determine if any of those impairments, alone or in combination, met or equaled any of the relevant Listings.  With regard to her mental impairment, after reviewing the opinions of Dr. Gtratton and Dr. Willers, the ALJ found that the limitations imposed by Dr. Willers were not fully consistent with the medical record as a whole. (R- 21).  She qualified that statement by commenting that "...I have allowed the claimant some mental limitations, which are discussed below, in my overall conclusion that she is not disabled due to a mental impairment." *Id.*  The ALJ then went on to evaluate the evidence in determining the Claimant's residual functional capacity.

As stated above, the issue is whether the ALJ properly evaluated the Claimant's mental impairment at step three of the analysis by failing to specifically enumerate Listing 12.05C.  In her Brief, Claimant contends that after finding that the Claimant had an IQ of 66/67, found that this was a severe impairment and found that she possessed other severe impairments, she was required to determine if Claimant met Listing 12.05C.  She argues that the ALJ erred in not specifically determining if Claimant met or equaled the relevant Listing.

In contrast, the Commissioner argues that the ALJ was not required to mention the precise Listing where it was the Claimant's burden of proof to show that her impairments met or equaled a listed impairment. (Commissioner's Brief, p. 11).  The Commissioner cites *Humphries v. Bowen*, an Eleventh Circuit case, to support her contention that there is no requirement that the ALJ determine whether the Claimant's impairments met or equaled a

specific Listing.  In *Humphries*, the court was asked to determine, as it is here,  whether the

ALJ erred by not specifically mentioning a Listing in finding that none of his impairments

met a listing in Appendix I.  The court, in relevant part, stated:

> In the present action appellant contends that the ALJ did not properly consider
> whether appellant met any of the impairments listed in Appendix 1 and that
> this failure to follow the sequential analysis set forth in 20 C.F.R. § 404.1520
> constitutes harmful error. We find, however, that while the ALJ did not
> explicitly state that the appellant's impairments were not contained in the
> listings, such a determination was implicit in the ALJ's decision. The ALJ was
> obviously familiar with the sequential evaluation process. His statement of the
> relevant law recognized that an affirmative determination regarding the
> applicability of any Appendix 1 listing, the third step of the disability analysis,
> would require a determination that the appellant was disabled. Yet the record
> indicates that the ALJ reached the final two steps of the analysis when he
> determined that the appellant was unable to perform his past work and that he
> did have the residual capacity for at least light work. While Appendix 1 must
> be considered in making a disability determination, it is not required that the
> Secretary mechanically recite the evidence leading to her determination. There
> may be an implied finding that a claimant does not meet a listing. *Edwards v.
> Heckler,* 736 F.2d 625, 629 (11th Cir.1984). We thus consider it clear that the
> ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly
> found that appellant did not meet any of the Appendix 1 impairments.

*Humphries v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

It should be noted here that the Eleventh Circuit has held that the ALJ is not required

to accept a claimant's I.Q. scores and may reject scores that are inconsistent with the record.

Test results of this sort should be examined "in conjunction with other medical evidence and

the claimant's daily activities and behavior." *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir.

1986).  Furthermore, *Lowery v. Sullivan,* a 1992 case from the Eleventh Circuit, held that a

valid IQ score is not conclusive of mental retardation if the score is not consistent with other

evidence of record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)  Therefore, it was proper for the ALJ to examine the record in assessing the reliability of Claimant's scores. For purposes of this review, the question is whether the ALJ, after accepting the IQ scores of the doctors who examined Claimant, properly determined that she was not disabled due to a mental impairment.

Ultimately, after reviewing all of the medical evidence, the ALJ found that Claimant's severe impairments, consisting of fibromyalgia, degenerative disc disease, dysthymic disorder and borderline intellectual functioning, did not alone or in combination meet any Listing for disability. (R- 20).  In analyzing the effects of Claimant's mental impairment, the ALJ "allowed some mental limitations", but found that her intellectual functioning did not render her disabled. (R- 21).

Based on the holdings *Humphries* and *Lowery,* this court finds that there was no error in the ALJ's failure to specifically identify Listing 12.05C in finding that Claimant's mental capacity does not meet the requirements of any relevant listing.  The court, which is not allowed to substitute its own judgment for that of the ALJ, further finds that the ALJ's decision was based on substantial evidence.

## II.      Did the ALJ err in discounting the opinion of Claimant's treating physician?

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it.  *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985).  A treating physician's report may be discounted when it is not accompanied

by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician.  *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).  *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

In the case at bar, the ALJ provided good cause for discounting the opinions of Dr. McDuffie and Dr. Arwood, finding that they were consistent with the record at the time they were made in 2000, but were not presently based on recent medical records. (R- 20).  The ALJ noted that both opinions precluded the Claimant from working at what was her current job, but also  noted that the opinions were made before Claimant retired from the job she held for 21 years as a school cafeteria manager and settled into a sedentary lifestyle. *Id.*

The Claimant contends that where "the ALJ failed to reject the opinions of Drs. McDuffie and Arwood, but only accepted her distortion of them, she has accepted the opinions as true as a matter of law." (Claimant's Brief, p. 17).  This contention lacks merit. In her decision, the ALJ specifically stated that "the opinions of both Dr. Arwood and Dr. McDuffie were made early in the disability review process and are considered reasonable assessments at the time they were made.  Both were in connection with the claimant's ability to continue her performance as a lunch room manager." (R- 22).  She then found that they were not found to be consistent with the entire medical record which reflects the ability to preform less strenuous work. (R- 23).

The ALJ provided a thorough and detailed discussion of Claimant's medical history of record.  She made reference to the medical improvements Claimant has experienced more recently regarding medications for pain management, the need for exercise and the fact that she has retired from her stressful job.  Although Claimant contends that in determining her RFC the ALJ failed to state with particularity the weight he gave different medical opinions, and failed to explain why Claimant's subjective allegations were not fully credible, it is not found to be so.  The ALJ clearly explained her reasons for giving the weight she accorded to each medical opinion. (R- 20-23).  Furthermore the findings of the ALJ very plainly explain why she found those allegations less than credible. (R- 21,22).

Nowhere in her decision has it been established that the ALJ applied an improper legal standard in discounting the opinions of Dr. Arwood and Dr. McDuffie.  The ALJ's analysis is found, therefore, to be supported by substantial evidence.

### III.    Did the ALJ err in determining Claimant's residual functional capacity?

In her decision, the ALJ found that Claimant retained the residual functional capacity (RFC) to perform light work with a sit/stand option. (R- 23).  The Claimant argues that his finding is not based on substantial evidence where the ALJ "admits that these findings were based on the opinions of the non-examining physicians."(Claimant's Brief, p. 17).  The Claimant contends that because the ALJ based her RFC finding on the opinions of non-examining consultative physicians who were not aware of Claimant's full medical history, her RFC finding could not be supported by substantial evidence. *Id.*

11

The Regulations state that where an ALJ finds that the Claimant's impairments do not meet the relevant Listing, she is required to make a determination as to whether the Claimant still has the residual functional capacity to engage in gainful employment by returning to his former work or performing other work which he would be able to perform taking into consideration his limitational impairments. (20 C.F.R. §§ 404.1545 and 416.945, Social Security Ruling 96-8p). In making his assessment, the ALJ considered all of Claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be considered consistent with the objection medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929, and Social Security Ruling 96-7p. (R-16). The ALJ also considered medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations. (20 C.F.R. § 416.927 and Social Security Rulings 96-2p and 96-6p).

Here, the ALJ found that the Claimant retained the residual functional capacity to perform light work with a sit/stand option. (R-23). He based this opinion on the Claimant's testimony, the medical opinions provided by treating physicians as well as the opinions of non-examining consultants, specifically noting that because they were not aware of all of the medical evidence, the value of the non-examining doctors' opinions would be given appropriate weight.

Based on his evaluation of the medical evidence as a whole, along with the testimony of the Claimant, the ALJ found that Claimant retained the RFC to perform light work. He

based that decision on several factors, none of which were inappropriate, in finding that this Claimant retained the ability to perform some work.  Accordingly, the ALJ applied the appropriate legal standards in determining Claimant's RFC, and her decision is supported by substantial evidence.

## CONCLUSION

Based on the evidence presented, no basis is found for the Claimant's claims that the ALJ committed error as the determinations made were completely within her judicial discretion.  Furthermore, the record fails to reveal any evidence that the ALJ acted outside of her judicial role in determining the extent of the Claimant's disability.

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the defendant Commissioner of Social Security be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this Recommendation.

THIS the 3rd Day of May, 2005.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

sWe