IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
THOMASVILLE DIVISION

| | |
|---|---|
| **JACKIE HUMPHRIES,** : | |
| : | |
| **Claimant,** : | |
| : | |
| v. : | CASE NO. 6:04-CV-43 (HL) |
| : | |
| **JO ANNE B. BARNHART,** : | |
| **COMMISSIONER OF SOCIAL** : | |
| **SECURITY,** : | |
| : | SOCIAL SECURITY APPEAL |
| **Defendant.** : | |

# **O R D E R**

Before the Court is Plaintiff's Motion for Reconsideration (Doc. 30), in which Plaintiff asserts the Court's Order affirming the decision of the Commissioner of Social Security, dated September 19, 2005, rests on clear error of law. Plaintiff argues the Court erred in four separate issues: (1) applying the wrong standard to determine whether Plaintiff met the requirements of Listing 12.05, (2) finding the Administrative Law Judge ("ALJ") had good cause to reject Plaintiff's treating physicians, (3) improperly concluding that the ALJ had not relied on non-examining doctors in determining Plaintiff's residual functioning capacity ("RFC"), and (4) holding the ALJ's failure to complete a Psychiatric Review Technique Form ("PRTF") was harmless error. Although the Court does not fully agree with Plaintiff's allegations of error, it is clear from the aforementioned order that the discussion of one issue is misleading. Accordingly, the Court's Order affirming the Commissioner's decision (Doc. 28) and the

judgment entered pursuant to that Order (Doc. 29) are vacated.

## I. LISTING 12.05

First, Plaintiff asserts that the Court improperly found Plaintiff's "other impairments" were not significant in determining that the Administrative Law Judge ("ALJ") had not accepted all the evidence necessary to meet Listing 12.05(c). Plaintiff argues that because the ALJ found that several of Plaintiff's impairments were severe impairments, the ALJ did indeed accept all evidence required to meet the Listing. The Court's prior discussion of this issue is admittedly misleading; however, the fact remains that the ALJ did not accept all the evidence necessary for Plaintiff to meet the requirements of Listing 12.05(c).

Mental disorder listings generally consist of a description of the specific mental disorder and criteria for determining whether the impairments experienced by a claimant are severe enough to prevent any gainful activity. The regulations clearly require that the claimant's limitations used to satisfy the severity criteria must be the result of the mental disorder described in the diagnosis description. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (A) (2005). Listing 12.05 is different; it consists of an introductory paragraph, which contains the diagnosis description for mental retardation, and four separate sets of criteria for determining whether the impairment experienced by the claimant is severe enough to meet the listing. The third set of criteria provides for a full scale IQ of 60 through 70 and a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt.404, Subpt. P, App. 1, §12.05(c) (2005).

In the discussion of this issue in the prior Order the Court improperly analyzed the "other

impairment" criterion under the general regulations for mental disorder listings, which requires all limitations to be a result of the mental disorder described in the diagnostic description. Because the structure of Listing 12.05 is unique, the "other impairment" criterion need not be related to the mental disorder as long as the impairment significantly affects work-related function. Thus, to meet the requirements of Listing 12.05(c) three elements must be established: (1) a claimant's mental impairment must satisfy the diagnostic description in the introductory paragraph, (2) the claimant must have an IQ score of 60 through 70, and (3) the claimant must have another mental or physical impairment that independently imposes a significant work-related limitation of function. Here, the Plaintiff claims that because the ALJ accepted Plaintiff's IQ score and classified Plaintiff's other impairments as severe, all evidence necessary to meet the listing was accepted. Yet, the acceptance of her IQ score and the classification of her other impairments as severe is insufficient to establish that her mental impairment satisfies the diagnostic description in the introductory paragraph.

Plaintiff also asserts that the Court erred in reading the transcript of the vocational expert's testimony. Plaintiff originally argued the ALJ's findings were incompatible because the ALJ accepted Plaintiff's IQ score, yet ignored testimony by a vocational expert that such scores would prevent Plaintiff from doing the jobs the ALJ ultimately found her able to perform. The Court reviewed the transcript and found that Plaintiff's original assertion misstated the record.[1] Now Plaintiff advances a new argument asserting that the vocational expert eliminated

---

[1] In the hearing the ALJ asked the vocational expert whether an individual with a valid IQ score below 70 would be able to perform certain jobs that the vocational expert had

all jobs because Plaintiff required a sit/stand option. As this argument was not raised in Plaintiff's Objections to the Report and Recommendation nor addressed by the Court in its September 20, 2005 Order, the Court will not address this argument here. See O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992) ("Motions to amend should not be used to raise arguments which could, and should, have been made before the judgment was issued.")

## II. TREATING PHYSICIAN'S OPINIONS

Plaintiff claims that "the Court conclud[ed] the ALJ had good cause to reject the opinions of Humphries's treating doctors because they were not based on recent medical records, and because they were given while she was working." Plaintiff argues that "there cannot be any good cause to reject opinions inaccurately described." Plaintiff suggests the ALJ inaccurately found that her treating doctors only said she could not do her past work, while her doctors actually classified her as totally disabled. Plaintiff bases this assertion on a portion of the ALJ's decision in which the ALJ states, "I find that Dr. McDuffie and Dr. Arwood's opinions are consistent with the record at the time they were given, i.e., the claimant could not perform her customary job [a]s a lunchroom manager." (Social Security Appeals Record. 20).

Although the above quoted sentence could possibly be interpreted as Plaintiff suggests, interpreting the sentence in context and considering other statements contained in the ALJ's opinion regarding Plaintiff's treating doctors' opinions, Plaintiff's interpretation is clearly

---

previously described. (R. 352.) The ALJ specifically asked if any of the previously mentioned jobs would be precluded. (R. 352.) The vocational expert said, "[M]y answer would be no, he could do the jobs that I've mentioned." (R. 352.)

contrary to the remainder of the opinion. First, the sentence Plaintiff rests her argument on could be interpreted differently than Plaintiff suggests. The second portion of the sentence "the claimant could not perform her customary job [a]s a lunchroom manager" could either be the ALJ's own determination or the ALJ's characterization of the doctors' opinions.

Further, when reading the above quoted sentence in context, it is clear that Plaintiff's interpretation in flawed. The ALJ notes that Dr. McDuffie stated that Plaintiff's symptoms "were making it increasingly difficult for her to perform her job on a regular basis," and that Dr. Atwood stated the Plaintiff was "'totally disabled from engaging in any useful employment at the present.'" (R. 20.) The ALJ then explained that those medical opinions were no longer consistent with the rest of the evidence in the record because the Plaintiff had retired from her job, settled into a sedentary lifestyle, and resumed all physical activity. (R. 20.) The ALJ further explained that although the doctor's opinions may have been correct at the time they were made, there was no longer evidence that the Plaintiff could not perform a less strenuous job. (R. 20.) Accordingly, the ALJ recognized that Plaintiff's physicians were of the opinion that Plaintiff was totally disabled. The ALJ simply disagreed with the physicians' opinions because of contrary evidence in the record.

**III. RFC**

The Plaintiff also argues that the Court improperly cited the pages of the ALJ's decision that support the Court's conclusion that the ALJ did not base her RFC determination solely on

the opinions of non-treating physicians. Plaintiff states that only the last page of the pages cited by the Court discusses the ALJ's conclusions about Plaintiff's RFC. Plaintiff also suggests that "the Court should not guess the ALJ's reasons, even if it can, as the Court reviews the ALJ's decision based on the reasoning contained within the decision."

Contrary to Plaintiff's assertions, the ALJ's discussion of Plaintiff's RFC begins on page twenty-one of the record. The ALJ then discusses Plaintiff's testimony and treating physicians' opinions. Further, on page twenty-three the ALJ specifically states,

> Opinions of non-treating and non-examining physicians are evaluated with particular attention as to consistency with other evidence; the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion. Consequently, careful consideration was given to the physicians who evaluated the claimant's abilities for the state in conjunction with the claim for disability benefits. Their assessments were made early in the disability process, without the benefit of additional medical evidence not contained in the record, and without benefit of observation of the claimant's demeanor and testimony at the hearing. Therefore, their opinions have been considered and accorded appropriate weight.

Clearly, the pages cited by the opinion, as described and quoted above, demonstrate the evidence the ALJ relied upon in determining Plaintiff's RFC. Therefore, the Court did not have to guess the ALJ's reasons for her conclusion; all the Court needed to do was actually read the ALJ's decision.

## IV. PRTF

Plaintiff finally argues that the Court found that it was harmless error when the ALJ did not conduct the required analysis of Plaintiff's mental limitations. Plaintiff also suggest that the

Court made an "essential error, by equating the ALJ's summary of the evidence with an evaluation of it."[2] Unfortunately, Plaintiff is again distorting the Court's Order. The Court concluded that the ALJ's failure to list each PRTF factor specifically in her decision, not the failure to conduct an analysis, was harmless error. Further, because the ALJ actually did perform the required analysis, the ALJ's technical failure to include a finding for one PRTF factor was harmless error. The language of the decision makes clear that the ALJ considered the limitations found on the state-completed forms. The ALJ specifically identifies the forms and affirmatively states that she is considering the limitations contained on those forms in making her decision. (R. 23.)

Second, Plaintiff argues that the ALJ's decision may include a summary of PRTF evidence, yet it does not include an evaluation of that evidence. Evaluate is defined as "[t]o examine and judge carefully; appraise." THE AMERICAN HERITAGE COLLEGE DICTIONARY 474 (3rd ed. 1997). Thus, the ALJ needed to examine the PRTF evidence and judge it carefully. The relevant portion of the ALJ's decision reads,

> I have also considered the mental limitations imposed by the Disability Adjudication Section psychological consultants who evaluated the claimant under Sections 12.02 and 12.04 of the mental listings, and concluded she had "mild" limitation of activities of daily living, "no limitation in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence and pace.

(R. 23.) The above quoted portion of the decision shows the ALJ considered the PRTF evidence

---

[2]Although Plaintiff attempts to cite portions of the Court's September 20, 2005 Order as authority for her assertions, many of the pages cited do not even discuss the PRTF issue.

and then concluded that Plaintiff suffered specific limitations. This portion of the decision is not simply a summary of the evidence; it is an evaluation of the evidence.

## V. CONCLUSION

In conclusion, for the reasons set forth above, Plaintiff's Motion for Reconsideration (Doc. 30) is granted in part and denied in part, and the Court's order affirming the Commissioners decision (Doc. 28) and the judgment entered pursuant to that order (Doc. 29) are vacated.

So ordered, this the 4th day of November, 2005.

                                                          **/s/ Hugh Lawson**
                                                        HUGH LAWSON, Judge

scs